# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTARS PENSION FUND, *et al.*, | ) ) ) Case No. 15-cv-7523 |
| Plaintiffs, | ) ) Judge Robert M. Dow, Jr. |
| v. | ) ) |
| CELTIC FLOOR COVERING, Inc., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, several trust funds that provide fringe benefits to members of the Chicago Regional Council of Carpenters, bring this action against Defendant Celtic Floor Covering, Inc. under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 *et seq.*, alleging that Defendant owes delinquent contributions to the funds. Before the Court is Plaintiffs' motion for summary judgment [75]. For the reasons set forth below, Plaintiffs' motion [75] is denied. This case is set for trial on June 28, 2019 at 9:30 a.m. to resolve the two genuine issues of material fact remaining: (1) whether Defendant made any contributions to other related funds that were not reflected in Plaintiffs' audit, and (2) whether Plaintiffs are owed contributions for one disputed employee. Final pretrial conference is set for June 13, 2019 at 9:30 a.m.

### I. Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits: [77]. The Court construes the facts in the light most favorable to the nonmoving party—here, Defendant. Before discussing those facts, however, the Court turns to the requirements of Local Rule 56.1.

### A. Local Rules

Local Rule 56 "may be the most important litigation rule outside statutes of limitations because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The Rule requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. L.R. 56.1(a)(3). The Rule further requires that such a statement consist of "short numbed paragraphs" to allow a responding party to easily answer or deny the allegations contained within. L.R. 56.1(a); *Malec*, 191 F.R.D. at 583. Accordingly, any party opposing party such a motion must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

"When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 599 F.3d at 632 (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, [the Seventh Circuit has] consistently upheld the district court's discretion to require strict compliance with those rules." *Id.* (citing *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005); *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases)). Here, Defendant failed to file a Local Rule 56.1 response to Plaintiffs' statement of facts or even a response to Plaintiffs' motion for summary judgment after being given multiple opportunities to do so. See [95]. Given Defendant has failed to contest the motion or even the facts put forward

by Plaintiffs, the Court deems as admitted all of Plaintiffs' statements of fact that are supported by the record. See *Salvadori v. Franklin Sch. Dist.,* 293 F.3d 989, 991–93 (7th Cir. 2002); *Huff v. UARCO, Inc.,* 122 F.3d 374, 382 (7th Cir. 1997); *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997); *Flaherty v. Gas Research Institute,* 31 F.3d 451, 453 (7th Cir. 1994); *Herman v. Chicago,* 870 F.2d 400, 404 (7th Cir. 1989); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1102 (7th Cir. 1990).

### B. Facts

The Chicago Regional Council of Carpenters Pension Fund, the Chicago Regional Council of Carpenters Welfare Fund, the Chicago Regional Council of Carpenters Supplemental Retirement Fund, and the Chicago Regional Council of Carpenters Apprentice Training Fund ("the Trust Funds" or "Plaintiffs") receive contributions from numerous employers pursuant to collective bargaining agreements entered into between employers and the Chicago Regional Council of Carpenters ("the Union"). [77, ¶ 3.] Consequently, the Funds constitute multiemployer plans under Section 37(A) of the Employment Retirement Income Security Act, 29 U.S.C. § 1002(37)(A). [*Id.*] Defendant is an employer that entered into a Collective Bargaining Agreement with the Union ("the CBA"), which binds it to various "Trust Agreements" with Plaintiffs. [*Id.* ¶ 4.] Defendant signed the CBA on January 7, 2011 and has been subject to it until the present day. [*Id.* ¶ 5.]

As a signatory to the CBA, Defendant is subject to "various Trust Agreements to which contributions are required to be made." [77-4, at 2.] In other words, Defendant was required to pay into the Trust Funds to pay for retirement and other benefits for its union employees. To ensure Defendant made these contributions, the CBA required Defendant to maintain payroll records. [77, ¶ 6.] These records are key because employers self-report their required

3

contributions to the Trust Funds. [*Id.* ¶ 8.] The system requires employers to record on a monthly reporting form ("the Monthly Report"): (1) the employees for whom it owes contributions, (2) the hours those employees worked, and (3) the gross wages paid to each covered employee. [*Id.*] Based on this information, the Monthly Reports set forth what contributions each employer owes. [*Id.*] Each Monthly Report is signed by the employer, who must certify its legitimacy, and then submitted to the Trust Funds. From August 2012 through February 2016, Defendant submitted Monthly Reports to the Trust Funds. [*Id.* at ¶ 9.] To allow the Trust Funds to ensure employers remit the proper amount for their union employees, the Trust Agreements and the CBA require employers like Defendant to provide access to documents, books, and records sufficient to determine whether the employer properly reported and/or submitted contributions to the Trust Funds. [*Id.* at ¶ 10.]

In light of those requirements, on February 9, 2015, and again on March 24, 2015, and April 20, 2015, the Trust Funds requested Defendant provide access to its books and records to confirm thar it had made the proper contributions for the period of August 2012 through February 2016. [*Id.* at ¶¶ 10-11]; [77-12, ¶ 11]; [77-13]. Defendant did not provide access to the requested books and records, however, and the Trust Funds obtained legal counsel to compel compliance. [77-12, ¶ 11.] Subsequently, on August 27, 2015, the Trust Funds filed this action to compel compliance with the required audit. See [1]. Shortly thereafter, Defendant was served with the complaint and summons. See [5]. Because Defendant did not answer the complaint in the allotted time, the Court issued a default order against Defendant on October 20, 2018. [9.] Despite the entry of that default order, as Kristina Guastaferri[1] explained in her sworn declaration,

---

[1] Guastaferri is the Administrator for the Trust Funds. [77-12, ¶ 1.]

"[Defendant] ultimately did not produce any of the requested records." [77-12, ¶ 12.] In fact, Robert Sveda, Defendant's designated witness and president of the company, repeatedly testified that he had still not located various documents at his deposition. [77, ¶ 18]; [77-17, at 19:19–20; 22:11–13; 58:24–59:3]. Consequently, to audit the Defendant's Monthly Reports and ensure that Defendant had remitted the proper amounts, the auditor was forced to rely on Defendant's cancelled checks and bank statements. [77, ¶ 14]; [77-12, ¶¶ 11–12].

The auditor used the cancelled checks to determine the monthly net pay for each of the Defendant's union employees. [77, ¶ 14.] The auditor then determined the hours each of Defendant's union employees worked per month by adjusting the net pay to gross pay. [*Id.* ¶ 15.] To do so, the auditor marked up the net pay by 26% to account for taxes and dues. [*Id.*] The auditor then divided the gross pay by the CBA's negotiated hourly wage scale for union employees to determine how many hours each of the Defendant's union employees worked per month. [*Id.* ¶ 16.] The auditor then compared these calculated hours to the contributions that Defendant had submitted to determine whether Defendant had remitted the proper amounts to the Trust Funds. [*Id.* ¶ 17.] The audit discovered that from August 2012 to February 2016, Defendant had omitted 22,699.75 hours of work. [*Id.* ¶ 20.] These under-reported hours were then multiplied by the applicable per hour fringe benefits contribution rate to calculate the amount Defendant owed to Plaintiffs. [*Id.*] These calculations showed that Defendant owed $637,211.36 in past-due contributions to the Trust Funds. [*Id.*][2]

---

[2] Defendant's president, Robert Sveda, admitted that all but two of the employees listed in the audit—Joshua Sanders and Sandro Seguro—performed carpentry work that called for contributions to the Trust Funds. [77, at 18.] Plaintiffs removed Seguro from the audit but refused to remove Sanders, pointing to Sanders's sworn affidavit that he had performed carpentry work. [*Id.* at 19.] Despite Plaintiffs' assertions otherwise, this is a genuine issue of material fact that cannot be resolved on a motion for summary judgment. Consequently, as explained below, the contributions for Sanders may not be included in the total owed by Defendant until after a determination at trial.

At his deposition, however, Sveda asserted that Defendant had submitted the purportedly past-due contributions to other funds related to Plaintiffs ("the Related Funds"). [*Id.* ¶ 22.] Sveda, however, could not produce any records of such contributions. [*Id.*] Furthermore, contrary to those assertions, Defendant did not report any employees to the Related Funds during the audit period of August 2012 through February 2016. [*Id.* ¶ 23.] In light of these failures, and as explained in greater detail below, Plaintiffs asks the Court to disregard these assertions.

In addition to the claimed contributions, Plaintiffs also assert that Defendant owes liquidated damages mandated by the Trust Agreements, the CBA, and the Trust Funds' collective policy mandate. [*Id.* ¶ 24.] These liquidated damages are calculated based on the rate set forth in the controlling Trust Agreements and fund policy, which is 1.5 percent compounded monthly. [*Id.* ¶ 25.] Pursuant to these calculations, Defendant owes liquidated damages totaling $127,442.27. [*Id.*] Likewise, Defendant also owes (1) interest on the delinquencies totaling $92,019.48 [*Id.* ¶¶ 26–27] and (2) reasonable audit fees and other reasonable costs incurred in the collection process totaling $8,115.50 [*Id.*]. In total, Plaintiffs seek $864,788.61 in addition to Plaintiffs' reasonable attorneys' fees and other reasonable costs incurred.

On September 28, 2018, Plaintiffs moved for summary judgment for this amount. [75.] Despite multiple extensions and opportunities to do so, Defendant has never responded to the motion. Thus, the Court must simply determine whether Plaintiffs have shown they are entitled to judgment as a matter of law.

II. **Legal Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely

6

disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party may also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But, a non-moving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to

7

accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

III. Analysis

Section 515 of ERISA, as amended, statutorily binds an employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to make those payments according to the terms of the plan so long as making those payments do not violate any law. 29 U.S.C. § 1145. If an employer fails to make required contributions to a plan, ERISA Section 502(g)(2) permits a fiduciary of the plan to enforce its right to those contributions by filing a federal civil action. 29 U.S.C. § 1132(g)(2). The statute compels district courts to award the total unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs of the action, to be paid by the defendant, and such other legal or equitable relief as the court deems appropriate. *Id.* § 1132(g)(2)(A–E). The "special remedies" listed by the statute—*i.e.* interest, liquidated damages, *etc.*—are mandatory and must be awarded if the Court concludes that a defendant did not pay required contributions. *Laborers Health & Welfare Tr. Fund For N. California v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988); see also *Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004) (ERISA requires a court to award attorneys' fees and costs to a prevailing fiduciary in an action to collect delinquent contributions).

Plaintiffs assert they are entitled to judgment as a matter of law against Defendant as to the amounts listed above because (1) it is undisputed that the CBA and Trust Agreements require Defendant to make contributions to the Funds for covered bargaining unit work performed by its employees; (2) it is undisputed that all the employees listed in Plaintiff's audit performed bargaining unit work, and (3) the Court must find that Defendant significantly under-reported the hours worked by those employees and thus under-contributed to the Plaintiffs during the audit timeframe for the employees because it has not maintained records that demonstrate otherwise.

Turning to Plaintiff's third argument, ERISA requires employers to maintain records for their employees "sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1); see also 29 U.S.C. § 1027 (requiring retention of such records for at least six years). "The records must be contemporaneous time records that reflect the type of work performed, the date the work was performed, and the work location." *Sullivan v. Tag Plumbing Co.*, 2012 WL 3835526, at *5 (N.D. Ill. Sept. 4, 2012) (internal quotation marks omitted); see also *RES Envt'l Servs.*, 377 F.3d at 739. The failure to do so has significant consequences if a fund raises genuine questions about the accuracy of the employer's record-keeping practices. *Id.* As the Seventh Circuit explained in *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*,

> [O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper. If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment. Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment.

347 F.3d 262, 264–65 (7th Cir. 2003). However, the presumption that arises when a fund has demonstrated that a defendant-employer owes contributions operates not to determine whether contributions are owed at all, but "to relieve [a] plaintiff fund of its burden to prove precisely how

much of the work performed by the defendant's employees was covered work when the employer has failed to keep records that would have allowed the fund to calculate accurately the amount of its damages." *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 783 (7th Cir. 2002). Moreover, the Seventh Circuit has explicitly explained "that this rule does not apply to compel judgment against an employer when the employer raises a genuine issue of material fact as to the accuracy of the fund's calculation." *Id.*; see *Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995) (employer's failure to come forward with documentary evidence establishing amount of covered work performed was not fatal in effort to oppose fund's motion for summary judgment when factual issues remained as to the amount owed).

Here, as acknowledged in Plaintiffs' statement of uncontested facts, Defendant's representative asserted under oath that he had submitted contributions to the "Will County and Detroit Funds," which would count against any deficiency owed to Plaintiffs. While Defendant's claim is unsupported by any documentary evidence and contrary to the affidavits of those fund's administrators submitted by Plaintiffs [77-19], Defendant's assertion that it made contributions for the employees in question raises a genuine issue of material fact. See *Hill v. Tangherlini*, 724 F.3d 965, 967 & n.1 (7th Cir. 2013) (overruling earlier cases indicating "self-serving" evidence could not be used to show genuine dispute of fact). If Defendant did make these contributions, those payments would reduce any amount owed to Plaintiffs given the amount of liquidated damages, interest, *etc.*, are calculated based on the amount of unpaid contributions. Thus, the Court cannot grant summary judgment in any amount at this time without resolving whether Defendant made contributions to any funds related to Plaintiffs, which requires a credibility determination forbidden at summary judgment. See *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001). At

10

trial, however, the audit and other calculations conducted by Plaintiffs and submitted on summary judgment will be credited as correct. Thus, the only question for trial will be determining what if any contributions Defendant made that have not already been considered in Plaintiffs' audit.[3]

Additionally, the Court also must resolve at trial whether Joshua Sanders performed covered work that required Defendant to make contributions on his behalf. Despite Plaintiffs' assertions to the contrary, by testifying pursuant to his personal knowledge that Joshua Sanders did not perform such work, Defendant's agent raised a genuine issue of material fact. At trial, however, without any additional evidence to contradict Sanders' sworn statement that he performed covered work, it will be very difficult for Defendant to convince the fact-finder otherwise. However, as just explained, at summary judgment the Court cannot disregard a competing statement made under oath simply because it lacks documentary evidence. The presumption that Plaintiffs seek to invoke is designed to protect funds like them from being short-changed by employers who keep inadequate books, not to completely shift the evidentiary burden to Defendants such that they must produce documentary evidence or face liability in whatever amount a fund asserts. As Plaintiffs pointed out in their statement of material facts [77, ¶ 19], Defendant asserts that Sanders did not perform coverd work. That assertion is enough to raise a triable issue regarding whether Plaintiffs are owed contributions for the hours Sanders worked. However, the only question at trial is whether Defendant was required to make contributions on

---

[3] As noted above, because the Court has not yet determined the principle amount of unpaid contributions, it cannot determine the amounts owed under ERISA's "special remedies" provision. However, should Defendant fail to show that any of the owed contributions calculated by Plaintiffs' audit are incorrect, the Court will adopt Plaintiffs' calculations presented with this motion *in toto*, with additional amounts awarded for interest accrued since the entry of their motion for summary judgment, attorney's fees, and any other amounts due under the statute upon a motion by Plaintiffs for that recovery.

his behalf.  Defendant has waived the right to contest the number of hours Sanders worked or any other details of Plaintiffs' calculations.

## IV. Conclusion

For the reasons explained above, Plaintiffs' motion [75] is denied.  This case is set for trial on June 28, 2019 at 9:30 a.m. to resolve the two genuine issues of material fact remaining:  (1) whether Defendant made any contributions to other related funds that were not reflected in the Plaintiffs' audit, and (2) whether Plaintiffs are owed contributions for the one disputed employee.  Final pre-trial conference is set for June 13, 2019 at 9:30 a.m.

Dated:  May 22, 2019

_____
Robert M. Dow, Jr.
United States District Judge